[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. Statement of the Case
In this case the plaintiff James R. Bannon appeals pursuant to General Statutes § 8-8 from the decision of the defendant Middlebury Zoning Board of Appeals ("board") denying his application for a variance from several of the requirements of the Middlebury Zoning Regulations, in order to permit him to CT Page 1771-O construct a single-family residence on a nonconforming lot.
II. Factual History
The subject property is located at 114 Yale Avenue in Middlebury, Connecticut. The lot is currently undeveloped. On a map of the area on file in the Middlebury Town Hall, the subject lot is numbered lot #239. On May 7, 1951, the subject lot #239 was conveyed to Richard and Gertrude Adkins. On that date the lot directly abutting the subject lot, which was numbered #238, was already owned by Richard Adkins. At some point either prior to or following the Adkins' acquisition of the subject lot, the Adkins constructed their residence on lot #238.
In 1975, Middlebury established Zoning Regulations ("regulations"). The subject parcel is located in the Yale Avenue section of Middlebury, which is designated an R-40 zone by the regulations. The Yale Avenue section of Middlebury, however, was developed prior to the adoption of the Middlebury Zoning Regulations. The majority of the developed lots in this CT Page 1771-P area are roughly .3 of an acre and would not meet the current minimum required setbacks, lot area, and building area requirements. Currently, for an R-40 district, the regulations require 40,000 square feet per lot, or roughly an acre to permit construction on the lot. (Middlebury Zoning Regulations, § 11.)
In 1968, Mr. Adkins passed away and Mrs. Adkins became the sole owner of both lots until her death in 1993. During the period from 1968 until the present, the two lots were taxed separately and assessed separately for the purposes of sewer assessments. After Mrs. Adkin's death, the executor of her estate sold lot #239 to the plaintiff and lot #238 to the plaintiff's business partner. The plaintiff and his business partner refurbished and remodeled the Adkins home on lot #238 and sold it to a third party sometime after the plaintiff filed his first request for a variance for the subject lot, #239. At the hearing on May 5, 1994, the plaintiff indicated that he and his partner were careful to keep title to the two lots separate, in order to maintain the nonconforming character of lot #239, and to permit construction of a second home on the nonconforming .3 acre lot. CT Page 1771-Q
On April 11, 1994, the plaintiff filed a Variance Application with the defendant in order to permit construction of the residence on lot #239. The plaintiff's application requested the following exceptions to the R-40 standards: a reduction in the minimum required lot area from 40,000' to 13,250'; a reduction of the minimum square from 150' to 70'; a reduction of the minimum frontage from 150' to 83.5'; a reduction of the minimum setback from 35' to 25', a reduction of the minimum required property line setbacks from 25' to 15' and 20' respectively; and a reduction in the minimum required first floor area from 900' to 740'. On June 1, 1994, the plaintiff amended his application by withdrawing the request for a variance from the minimum street setbacks.
Three hearings were held before the board, at which time residents of the neighborhood attended the meetings and voiced their opposition to the plaintiff's application. The residents' primary concerns were with the inadequate water table in the neighborhood and the traffic and congestion problems attendant with building another home in the neighborhood. The majority of CT Page 1771-R the testimony before the board concerned the water problems recently experienced in the Yale Avenue area, such as an insufficient water table to supply sufficient water for the neighborhood, which gets its water by private wells.
On July 6, 1994, the board held the last public hearing and voted to deny the plaintiff's request on the ground that the § 10 Middlebury Zoning Regulations, infra, merged lots #238 and #239 by operation of law while they were under the common ownership of Mrs. Adkins. Although the board did not specifically refer to this particular section of the regulations, the substance of their discussion was that a specific section of the regulations dealing with nonconforming contiguous lots required the merger of lots #238 and #239, thus precluding the granting of the requested variance[1]. The record in this matter was very hard to follow since the transcription left out many words, phrases or sentences. The town must improve its process of recording what occurs at the meetings of the Zoning Boards. If the process used results in a faulty transcription of the proceedings, then courts will remand cases back to the Board for lack of a full record. CT Page 1771-S
III. Jurisdiction
 A. Aggrievement
The plaintiff alleges aggrievement. Aggrievement is a jurisdictional question. Winchester Woods Associates v.Planning and Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953
(1991). "Unless the plaintiff alleges and proves aggrievement, his case must be dismissed. . . . Aggrievement presents a question of fact for the trial court." Fuller v. Planning Zoning Commission, 21 Conn. App. 340, 343, 573 A.2d 1222 (1990). The owner of the property subject to the appeal is classically aggrieved. See Winchester Woods Associates, supra, 219 Conn. 308;Bossert Corporation v. Norwalk, 157 Conn. 279, 285,253 A.2d 39 (1968). The plaintiff has alleged and the defendant admits that the plaintiff owns the property subject to the appeal. Therefore, the court finds that the plaintiff is aggrieved.
B. Timeliness
CT Page 1771-T
General Statutes § 8-8(b) through (e) requires the aggrieved party appealing from the decision of a zoning board of appeals to commence service of process "by leaving a true and attested copy of the process with or at the usual place of abode of the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality" within fifteen days from the date that the notice of the board's decision was published. General Statutes § 8-8(b).
On July 6, 1994, the board voted to deny the plaintiff's application and published a notice of decision in a newspaper. On July 20, 1994, the plaintiff caused a sheriff to serve a true and attested copy of the citation, recognizance and appeal on the Middlebury town clerk at the town clerk's office, and the chairman of the board at the chairman's home. (Sheriff's Return.) The original citation, recognizance, and appeal were filed with the court on July 22, 1994. The plaintiff's appeal was served within the fifteen (15) day period required by General Statutes § 8-8(b) and, therefore, the appeal is timely.
IV. Scope of Review
CT Page 1771-U
A trial court may not substitute its judgment for that of the administrative tribunal. Frito-Lay, Inc. v. Planning andZoning Commission, 206 Conn. 554, 572-73, 538 A.2d 1039 (1988).
 In reviewing the actions of a zoning board of appeals we note that such a board is "`endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal'". . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . . In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is factual support for the board's decision, not the contentions of the applicant.
Pleasant View Farms Development, Inc. v. Zoning Board ofAppeals, 218 Conn. 265, 269-70, 588 A.2d 1372 (1991); see alsoFrito-Lay, Inc. v. Planning and Zoning Commission, supra, CT Page 1771-V206 Conn. 573.
 [I]t is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached.
(Citations omitted.) Primerica v. Planning Zoning Commission,211 Conn. 85, 96, 558 A.2d 646 (1989). Generally, the court is limited to the evidence contained in the return of record. General Statutes § 8-8(k). The action of the administrative agency should be sustained if even one of the stated reasons is sufficient to support it. Frito-Lay, Inc. v. Planning ZoningCommission, supra, 206 Conn. 576.
V. Merits
CT Page 1771-W
As noted above, the plaintiff's application before the board requested variances from several of the requirements of the Middlebury Zoning Regulations for lot #239, based on its nonconforming character.
 The authority of a zoning board of appeals to grant a variance under General Statutes § 8-6 (3) "requires the fulfillment of two conditions: `(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan.' Smith v. Zoning Board of Appeals, 174 Conn. 323, 326, 387 A.2d 542 (1978)." Grillo v. Zoning Board of Appeals, 206 Conn. 362, 368, 537 A.2d 1030 (1988). "It is well settled that the hardship must be different in kind from that generally affecting properties in the same zoning district . . . ." Smith v. Zoning Board of Appeals, supra, 174 Conn. 327; Grillo v. Zoning BoardCT Page 1771-X of Appeals, supra, 206 Conn. 373.
(Footnoted omitted.) Francini v. Zoning Board of Appeals,228 Conn. 785, 790, 639 A.2d 519 (1994).
 "Where a nonconformity exists, it is a vested right which adheres to the land itself. `And the right is not forfeited by a purchaser who takes with knowledge of the regulations which are inconsistent with the existing use.' 1 Anderson, American, Law of Zoning (2d Ed.) § 6.37, p. 445." Petruzzi v. Zoning Board of Appeals, 176 Conn. 479, 483, 408 A.2d 243 (1979). Where the applicant or his predecessor creates a nonconformity, the board lacks power to grant a variance. . . . Garibaldi v. Zoning Board of Appeals, 163 Conn. 235, 239, 303 A.2d 743 (1972); Highland Park, Inc. v. Zoning Board of Appeals, 155 Conn. 40, 43, 229 A.2d 356 (1967). But if the hardship is created by the enactment of a zoning ordinance and the owner of the parcel could have sought a variance, then the purchaser has the same right to seek a variance CT Page 1771-Y and, if his request is supported in law, to obtain the variance. Petruzzi v. Zoning Board of Appeals, supra. Otherwise the zoning ordinance could be unjust and confiscatory.
Johnny Cake, Inc. v. Zoning Board of Appeals, 180 Conn. 296,300-301, 429 A.2d 883 (1980).
As noted above, the reason given by the board for denying the plaintiff's application for a variance was because it construed 10 of the Middlebury Zoning Regulations to require a merger of lots #238 and #239 into one conforming lot for the requirements of minimum lot size and building regulations. Accordingly, the board's decision that the lots merged by operation of law, if correct, would support a denial of the variance because the present nonconformity of lot #239 would have been created by the plaintiff's own actions in separately purchasing and attempting to develop lot #239 after the merger had occurred.
Once a local zoning authority has found or could have CT Page 1771-Z found, from the record before it, that there was a merger of lots, the trial court is "restricted to a determination of whether the board's finding of merger was reasonably supported by the record and whether this was a pertinent basis on which to deny the plaintiff's application." Horn v. Zoning Board of Appeals, 18 Conn. App. 674, 677, 559 A.2d 1174 (1989). A trial court cannot disturb a zoning board's factual finding of merger as long as that finding is the product of an honest judgment reasonably exercised. To do so would be an improper substitution of the trial court's judgment for that of the board. Id., 676-77.
Marino v. Zoning Board of Appeals, 22 Conn. App. 606, 608,578 A.2d 165 (1990).
The issue, therefore, presented by this appeal is whether the board's decision, i.e. that § 10 of the regulations mandated merger of lots #239 and #238, was reasonably supported by the record and was a pertinent basis on which to deny the plaintiff's application. Horn v. Zoning Board of Appeals, CT Page 1771-AA supra, 18 Conn. App. 677. "Merger can occur by operation of law; that is, a town's zoning regulations may mandate merger of adjacent lots that are commonly owned. See Neumann v. ZoningBoard of Board of Appeals, 14 Conn. App. 55, 539 A.2d 614, cert. denied, 208 Conn. 806, 545 A.2d 1103 (1988)." Marino v. ZoningBoard of Appeals, supra, 22 Conn. App. 607 n. 1. "It is not uncommon for a local zoning ordinance, in an attempt to reduce non-conforming lots to conforming lots, to include a provision requiring that substandard lots be merged with subsequently acquired adjacent lots, so that as a result, the combined lots equal or exceed the required minimum area. 3 Rathkoph, Law of Zoning and Planning, § 32.07 (4th Ed., Rev. to 1987)." Johns v.Old Lyme Zoning Board of Appeals, Superior Court, judicial district of New London at New London, Docket No. 50 49 32, (September 8, 1988, Hurley, J.); see also T. Tondrow, Connecticut Land Use Regulation (2d Ed., 1992), Ch. 3.E.4, p. 174. Merger "is consistent with the general goal of zoning law "`to reduce nonconforming to conforming uses with all the speed justice will tolerate.'" Helbig v. Zoning Commission, 185 Conn. 294,306, 440 A.2d 940 (1981), quoting Blum v. Lisbon LeasingCorporation, 173 Conn. 175, 181, 377 A.2d 280 (1977)." NeumannCT Page 1771-BBv. Zoning Board of Appeals, 14 Conn. App. 55, 62, 539 A.2d 614
(1988).
Section 10 of the Middlebury Zoning Regulations dictates that,
 [t]he lawfully permitted use of land or structures existing at the time of the adoption of the zoning ordinance or any amendment thereof may be continued, although such use does not conform to the standards of the district in which such land or structure is located. Said uses shall be deemed nonconforming uses.
. . . .
NONCONFORMING LOT:
 A parcel of land, which fails to meet the area, shape or frontage of any other applicable requirements of these Regulations pertaining to lots, may be used as a lot, and a building or other structure may be CT Page 1771-CC constructed . . . provided that the following requirements are met:
 a. The use, building or other structure shall conform to all other requirements of these regulations;
 b. No owner of the parcel since October 15, 1959 shall have been the owner of contiguous land which in combinations of such nonconforming parcel would make or would have made a parcel that conforms or more nearly conforms, to the area, shape or frontage requirements of these regulations pertaining to lots;. . . .
(Emphasis added.)
The board construed the emphasized text to mandate merger by operation of law. Although a zoning authority's interpretation of a particular land use regulation is entitled to some deference; Roy v. Centennial Insurance Co., 171 Conn. 463, 473, CT Page 1771-DD370 A.2d 1011 (1976); Coppola v. Zoning Board of Appeals,23 Conn. App. 636, 640, 583 A.2d 650 (1990); the interpretation of an ordinance is a question of law for the courts. Robinson v.Unemployment Security Board of Review, 181 Conn. 1, 6,434 A.2d 293 (1980); Coppola v. Zoning Board of Appeals, supra,23 Conn. App. 640. Zoning regulations are in derogation of the common law, and therefore must be strictly construed and not extended by implication. Schwartz v. Planning Zoning Commission,208 Conn. 146, 153, 543 A.2d 1339 (1988). Zoning regulations are to be interpreted in accordance with the ordinary rule of statutory construction, that where the language of the statute is clear and unambiguous, courts cannot by construction read into the statutes provisions that are not clearly stated. Id. The court must "interpret an enactment to find the expressed intent of the legislative body from the language it used to manifest that intent." (Citations omitted.) Planning Zoning Commission v.Gilbert, 208 Conn. 696, 705, 546 A.2d 823 (1988). Also, zoning ordinances should be read as a whole and construed in a manner rendering the ordinance effective and workable, rather than bizarre and unreasonable. Id., 705-06. The words used in zoning ordinances are construed according to the ordinary usage CT Page 1771-EE of language. Id., 705.
According to the provisions of § 10, in order to prevent a merger by operation of law, "no owner since October 15, 1959, shall have been the owner of contiguous land" used to combine nonconforming parcels. (Emphasis added.) Strictly construed;Schwartz v. Planning Zoning Commission, supra, 208 Conn. 153; the plain language of this section requires joint ownership of both lots since October 15, 1959 in addition to the other requirements articulated in the ordinance in order for merger by operation of law to occur. Cf. Bell v. Zoning Board of Appeal, supra, 27 Conn. App. 46 (in order to prevent merger by operation of law under terms of ordinance, all requirements of ordinance must be met).
The record, however, indicates that the two lots were not under single ownership until 1968, when Mrs. Adkins took sole title to both lots. The record discloses that prior to 1968, although Mr. Adkins had an interest in both lots, he was not the sole owner of lot #239. During the period from October 15, 1959, until Mr. Adkins death in 1968, Mrs. Adkins, who was an CT Page 1771-FF owner of the nonconforming parcel, was not an owner of an adjoining parcel. Accordingly, there was no merger by operation of law pursuant to § 10 of the regulations. Accordingly, the board's finding of merger was not reasonably supported by the record and was not a pertinent basis on which to deny the plaintiff's application. Horn v. Zoning Board of Appeals, supra, 18 Conn. App. 677; Marino v. Zoning Board of Appeals, supra, 22 Conn. App. 608.
The case Miller v. Zoning Board of Appeals, 36 Conn. App. 98, ___ A.2d ___ (1994), presents a similar factual scenario. In that case, the plaintiff applied for a variance in order to develop a nonconforming lot, which the zoning board of appeals denied on the ground that the lot had merged with another contiguous common-owned parcel by operation the town's zoning ordinance dealing with merger. The trial court upheld the board's decision. The appellate court, in construing the ordinance, determined that a merger by operation of law did not occur under facts in the record before it, and therefore, the board's decision denying the variance based on merger was determined to be erroneous. Id., 104. The appellate court held CT Page 1771-GG that,
 [b]ecause the board . . . based [its] ruling [that merger occurred] on an incorrect application of law, the plaintiff has never received a hearing on his application for a variance without reference to the [adjoining] lot. The properties never merged; the plaintiff has the right to an opportunity to attempt to demonstrate hardship on the basis of his property alone, without reference to the [adjoining] lot.
 Similarly, the plaintiff never received a hearing on his application for a variance from the access requirement without reference to the [adjoining] lot. The board based its ruling on the application for access variance at least in part on its assumption that the hardship was self-created due to the merger of the plaintiff's lot and the [adjoining] lot. Again, the plaintiff is entitled to an opportunity to demonstrate that he will suffer hardship by the application of the access requirements to his property CT Page 1771-HH alone.
 The judgment is reversed and the case is remanded with direction to render judgment remanding the case to the . . . zoning board of appeals for a hearing on whether the plaintiff's lot, standing alone, warrants a variance from the application of the shape and access requirements.
Id., 105-06.
In the present case, the only articulated reason for denying the plaintiff's application for a variance was that the property merged by operation of § 10 of the Middlebury Zoning Regulations. Although some evidence was presented with respect to the issue of merger by inference, the board decision is silent with respect to this issue, instead relying solely on merger by operation of law.[2] "When a zoning authority has stated the reasons for its action, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision." (Citations omitted; internal CT Page 1771-II quotation marks omitted.) Horn v. Zoning Board of Appeals,18 Conn. App. 674, 676, 559 A.2d 1174 (1989). Accordingly, this court cannot review the evidence and make a finding of the previous owner's intent or lack thereof to merge the two lots. Id.; see also Pleasant View Farms Development, Inc. v. ZoningBoard of Appeals, supra, 218 Conn. 269-70 (court review the record to determine whether there is factual support for zoning board's decision); Frito-Lay, Inc. v. Planning and ZoningCommission, supra, 206 Conn. 572-73. Also, the board did not consider whether the plaintiff's lot, standing alone, warrants a variance. See Miller v. Zoning Board of Appeals, supra,36 Conn. App. 106. Accordingly, this court remands the case to Middlebury Zoning Board of Appeals, for a hearing in conformity with this decision;
WILLIAM J. SULLIVAN, J.